UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHRISTOPHER STRAHAN,

    Plaintiff,

v.

SPEEDWAY LLC,

    Defendant.

Case No. 25-11065
Honorable Laurie J. Michelson

---

**OPINION AND ORDER DENYING DEFENDANT'S
MOTION FOR SUMMARY JUDGEMENT [13]**

---

Christopher Strahan slipped and fell at a Speedway convenience store in May 2024. He attributes that fall to a damaged and wet floor mat placed just inside the threshold of the store. Thus, he sues Speedway for premises liability. Speedway, however, blames residual wetness on Strahan's shoes from the rain-soaked parking lot. Because Strahan cannot conclusively rule out that his shoes, rather than the floor mat, caused his fall, Speedway says Strahan cannot establish causation and seeks summary judgment. But the narrow possibility of another cause does not preclude Strahan from presenting his claim to a jury. For the reasons that follow, Speedway's motion for summary judgment is DENIED.

**I.**

It was raining on May 17, 2024, when Christopher Strahan stopped at a Speedway gas station and convenience store in Sterling Heights, Michigan. (ECF No. 15, PageID.323.) Strahan was running late to work but stopped at the store anyway

to buy "a couple drinks and some cigarettes" for the day. (*Id.* at PageID.327.) Focused on getting his drinks and leaving, Strahan did not notice the yellow "wet floor" sign posted about four feet from the store's entrance. (*Id.* at PageID.352, PageID.354.) Nor did he notice the wetness that was allegedly pooled in the top right corner of the traction mat, just inside the door. (*Id.* at PageID.346.) But "[a]s soon as" he stepped off the traction mat and onto the floor tile, Strahan slipped. (*Id.* at PageID.320.) His feet came out from under him, and his left knee and shoulder landed on the tile floor below. (*See* ECF No. 13-1, PageID.165–166, 167–168.) A few other customers came to Strahan's aid and helped him up. (*Id.*) Only then did Strahan look back and see that the floor mat appeared wet and there were "some spots missing out of the mat, like the gripping stuff was out of the mat. . . ." (ECF No. 15, PageID.346.) There, water was pooled in "a little puddle" approximately the size of a "cantaloupe" in the "northeast" or "top right" corner of the mat. (*Id.* at PageID.349.) Strahan believes he slipped because his shoes picked up some of this excess water from the mat. (*Id.* at PageID.345.)

After his fall, Strahan proceeded to shop for a drink (*id.* at PageID.364), then reported the fall to the store manager, Jeff, alerting him that he planned to go the hospital because he could "feel" something "wasn't right." (*Id.* at PageID.320–321.) So after making his purchase, Strahan drove himself to Henry Ford Hospital, where they took x-rays of his knee and back. (*Id.* at PageID.320–321, 369.) Those x-rays showed "some sort of stress fracture." (*Id.* at PageID.321.) He received no other diagnoses and was given some instructions on how to deal with stress fractures and sent home. (*Id.*

at PageID.391.) At some point later that day, Strahan's ex-wife went to the Speedway and took a picture of the offending door mat. (*Id.* at PageID.387; ECF No. 13-3, PageID.270.)



Speedway's Exhibit 3 (ECF No. 13-3, PageID.270.)

Strahan admits he "really do[esn't]" know for sure if he slipped because his shoes were wet from the floor mat or from the rain outside. (ECF No. 15, PageID.348.) But he maintains that water on the mat, not his shoes, caused his fall, because he "had walked all the way across the mat and then fell," so any residual water on his shoes from the parking lot should have been dried off by his initial steps on the mat. (*Id.*) And Strahan denies walking through a portion of the parking lot that appeared

wet. (*Id.* at PageID.344 (Q: "So, there is water on the ground?" A: "Yes. And I was not walking there. I had to walk up on the side of the car.").)

Speedway moved for summary judgment on the sole ground that Strahan cannot prove causation as a matter of law, because his theory that excess water on the mat caused his fall is "speculative." (ECF No. 13, PageID.115–116.) The motion is fully briefed (ECF Nos. 15, 16) and does not require further argument, so the Court decides it without a hearing. E.D. Mich. LR 7.1(f)(2).

## II.

Under Federal Rule of Civil Procedure 56, "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute is "genuine" if the evidence permits a reasonable fact-finder to return a verdict in favor of the nonmovant, and a fact is "material" if it may affect the outcome of the suit. *See Bethel v. Jenkins*, 988 F.3d 931, 938 (6th Cir. 2021).

In making this determination, the Court must view facts in the record, and reasonable inferences that can be drawn from those facts, in the light most favorable to the nonmoving party—Strahan. *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). This "'usually means adopting the plaintiff's version of the facts.'" *Tawney v. Portage Cnty.*, No. 21-3809 2022 U.S. App. LEXIS 16681, at *7 (6th Cir. June 15, 2022).

**A.**

"All negligence actions, including those based on premises liability, require a plaintiff to prove four essential elements: duty, breach, causation, and harm." *Kandil-Elsayed v. F & E Oil, Inc.*, 512 Mich. 95, 110 (Mich. 2023). Speedway's motion focuses exclusively on one factor: causation. Although sometimes a jury question, a court "may decide causation as a matter of law if the plaintiff presents insufficient evidence to 'support a reasonable inference' of causation." *Karres v. Allied Dev. Co., LLC*, Case No. 20-10108, 2022 U.S. Dist. LEXIS 87746, at *15 (E.D. Mich. May 16, 2022) (quoting *Demo v. Red Roof Inns., Inc.*, 274 F. App'x 477, 479 (6th Cir. 2008)).

To survive summary judgment, "plaintiff's theory of causation must rise above mere 'speculation or conjecture.'" *Ackerman v. Walmart Stores, Inc.*, No. 22-11180, 2024 U.S. Dist. LEXIS 3729, at *7–8 (E.D. Mich. Jan. 8, 2024) (quoting *Stefan v. White*, 257 N.W.2d 206 (Mich. Ct. App. 1977)). That means, at a minimum, Strahan's causation theory "must have some basis in established fact." *Skinner v. Square D Co.*, 445 Mich. 153, 165 (Mich. 1994). He can make this showing through circumstantial evidence. *Ranney v. Dolgencorp, LLC*, No. 23-12550, 2025 U.S. Dist. LEXIS 164553, *8 (E.D. Mich. Aug. 25, 2025). But the evidence must be sufficient for a jury to conclude "'*more likely than not*'" that Speedway's conduct was the cause of his injuries. *Karres*, 2022 U.S. Dist. LEXIS 87746, *20 (citing *Skinner*, 445 Mich. at 164–65) (emphasis in original). Critically, Strahan does not have to negate *all* other possible causes of his injury. *See Campbell v. Kovich*, 273 Mich. App. 227, 232–22

5

(Mich. 2006). He need only rule out "other reasonable hypotheses with a fair amount of certainty." *Id.*

**B.**

Speedway contends that Strahan cannot establish causation because he does not rule out that his shoes—not the mat—were wet from the rain and therefore caused him to slip. True, it is well established that a slip-and-fall plaintiff who does not know what caused his fall cannot prove causation under Michigan law. *See, e.g.*, *Karres*, 2022 U.S. Dist. LEXIS 87746, at*16–18 (collecting cases); *Ackerman*, 2024 U.S. Dist. LEXIS 3729, at *11–12 (granting summary judgment for defendant where plaintiff "testified . . . that she does not remember seeing any substances on the floor in the area where she fell and does not recall her feet slipping or feeling any wetness on her clothes"). Speedway argues that this case falls within that body of law, because in its view, Strahan has no way of knowing what caused his slip: shoes or mat.

But Speedway's wet-shoe theory suffers from a few factual defects. For one, Strahan denies that his shoes were wet from the parking lot. (ECF No. 15, PageID.344 ("I was not walking there [on visibly wet portion of pavement]"); *id.* at PageID.331 ("I was wearing my . . . work boots. . . They were caterpillar brand, they were slip – oil and water resistant for slipping.").) And if, as Speedway contends, Strahan's shoes were wet and the mat was dry, one would imagine, as Strahan testified, that the floor mat would wipe off any residual moisture on his shoes—as intended. (*See id.* at PageID.348.)

6

But in any event, Michigan law does not require Strahan to disprove *all* possible causes of his slip, including Speedway's wet-shoe theory. *Campbell*, 273 Mich. App. at 232–22. He need only present *some* evidence showing that his theory is more likely than other reasonable alternatives. *See id.* And he has. Strahan testified that he was wearing no-slip shoes, that he had not stepped in any of the puddles in the parking lot, that he had previously walked safely into the store on rainy days without a problem, and that after his fall, he saw water pooled on the mat. (ECF No. 15, PageID.345–350.) In other words, viewing the record in a light most favorable to Strahan, he has ruled out the wet-shoes-from-the-parking-lot theory with sufficient certainty.

Strahan's direct observations of the pooled mat-water stand in sharp contrast to the cases Speedway relies on—cases in which the plaintiff did *not* see what may have caused their fall. (ECF No. 13, PageID.113–115 (citing *Kassab v. Target Corp.*, No. 16-12788, 2017 WL 2880086, at *5 (E.D. Mich. July 6, 2017) (granting summary judgment for defendant where plaintiff "did not see any water or other liquid on the floor" but suspected the floor was recently cleaned because he smelled cleaner and the floor was shiny); *Pete v. Iron Cnty.*, 192 Mich. App. 687, 689 (Mich. Ct. App. 1991) (granting summary disposition where plaintiff did not know what caused her fall but hypothesized that it could have been water); *Stefan*, 76 Mich. App. at 661–62 (granting summary judgment for defendant where plaintiff testified that she "just went down" and did not know why she fell).).

For these reasons, Speedway has failed to satisfy its burden of showing there is no genuine dispute of material fact for a jury to decide. *See, e.g.*, *Mast v. Speedway LLC*, No. 24-106, 2025 U.S. Dist. LEXIS 37176, at *15–16 (W.D. Mich. Mar. 3, 2025) ("Speedway homes in on Mast's uncertainty about the cause of her fall . . . Speedway argues this evidence is too speculative. The Court disagrees. Mast testified that she fell on her back and then saw ice underneath her. She concluded that the ice was the cause of her fall . . . A reasonable jury could reach the same conclusion . . . ").

## III.

There are other tricky aspects of Strahan's claim that will have to be addressed at trial. For one, Strahan appears to have a history of work injuries and falls, such that a jury will have to disentangle any injuries attributable to Strahan's Speedway fall from his preexisting injuries. (ECF No. 15, PageID.311 (noting that Strahan has twice applied for social security disability for "severe nerve damage" throughout his back, hands, and legs, and "12 herniated discs.").)

But Speedway does not raise this or any other issue at this stage. So the case survives summary judgment. For the reasons provided, Speedway's motion is DENIED.

IT IS SO ORDERED.

Dated: June 22, 2026

s/Laurie J. Michelson
LAURIE J. MICHELSON
UNITED STATES DISTRICT JUDGE